BLACK *et al.*
*vs*
BUSH *et al.*

ministrator consented to the distribution of the slaves when there was a sufficiency of personalty to pay pl'tiff's demand, does not prove the adm'r. guilty of a *devastavit.*

*Goodloe* for plaintiff; *Robinson & Johnson* for defendant.

---

CHANCERY.                **Black** *et al.* *vs* **Bush** *et al.*

Case 54.              ERROR TO THE CLARKE CIRCUIT.

*Partners and partnership. Substitution. Usury. Practice in chancery.*

October 26.      CHIEF JUSTICE EWING delivered the opinion of the Court.

Case stated.     BUSH, the administrator of Azariah Martin, deceased, filed his bill for a sale and distribution of the proceeds of his estate, under the statute of 1839, (3 *Stat. Laws*, 240,) in which he makes the creditors and heir of the deceased parties, also Wm. C. Thomas, alledging that he and the decedent were equal partners in all the estate owned or possessed by both or either, and subject to equal responsibility for all the debts, and that the whole of the copartnership effects were insufficient to pay the debts and liabilities, and praying a sale of the real estate and a *pro rata* distribution.

1st. We concur with the Chancellor in disallowing the assignments made by Thomas to Black and Bobert Martin, of his share of the proceeds of the sale of the firm effects, which had been made by Bush as administrator, under the power that had been given him to sell by Thomas and Martin, and *apply the proceeds to the payment of the firm debts.* We regard the power to sell, connected with the *direction to apply the proceeds,* as investing the funds in Bush, *in trust,* for the use and benefit of all the creditors of the late firm of Thomas & Martin, and that the power to revoke or change the destination of the fund could not be exercised to the prejudice of the *cestui que trust,* in a rateable distribution of the fund, upon terms of equality among them. And the more especially should this construction be carried out and enforced, from the consideration that the firm was insolvent and its whole means insufficient to pay the firm debts, and a suit was then pending in which the surviving partner and heir of the deceased partner, and all the creditors were before the Court, as defendants to a bill filed by the administrator, alledging the insufficiency of the entire firm effects to pay the firm debts, and in which the creditors, through the administrator, were in effect asserting their demands against the firm, at the time of the assignment, and asking a rateable distribution of the partnership funds, all of which were necessary to pay those debts, and to that end must be sold.

Besides, each partner had a lien upon the firm effects, for the payment of firm debts, and the firm creditors have a right to be substituted to the lien of the partner, in the application and rateable distribution of the firm effects among them, upon terms of equality, especially when the firm is insolvent, and the whole subject is under the control of the Chancellor.

2d. We have had great difficulty and doubt as to so much of the decree of the Chancellor as rejects so large an amount of the claims and demands set up and asserted by Black. The relationship between him and the partners, the efforts to accumulate in his hands the funds of the firm, the partnership between him and them in the distilery, the true state and condition of which is not

---

BLACK *et al.*
*vs*
BUSH *et al.*

One partner has no right to divert by his assignment to his separate creditors, any portion of the firm effects to the prejudice of the creditors of the firm.

Each partner has a lien upon the partnership effects for the payment of the firm debts, and the firm creditors have a right to be substituted to the lien of the partner in the application and rateable distribution of the firm effects, in case of a deficiency.

BLACK *et al.*
*vs*
BUSH *et al.*

shown, nor how it was settled, or whether profit or loss accrued, the numerous dealings between them, the fact that notes, for large amounts in cash, are executed, at short intervals between them, pretended to be for loaned money, exceeding all reasonable estimate that can be made of such rapid accumulation, in cash, in the hands of Black, from any sources of income that he is shown to have possessed, the fact that he is detected in presenting one false demand, taken in connection with the proof of his confessions in the cause, are calculated to cast a cloud of suspicion over his claims, and to create a strong presumption against them. The precise amount that should be allowed, is extremely difficult to determine. We are not satisfied that the Chancellor below has done injustice in rejecting the amount that he rejected, and cannot feel satisfied to reverse his decree on that ground.

3d. But we think that the note assigned by Black to Thomas, in the purchase of the land, should have been allowed to Black, in addition to the claims allowed him. Bush retains a lien upon the land sold by Thomas to Black, for the whole consideration of Thomas' purchase from Bush. Thomas is insolvent and the whole burthen of payment falls upon Black, he ought, therefore, to be restored to the note which he gave to Thomas, in his purchase, and be allowed to set it up in the rateable distribution of the funds of the firm, in the same manner as if it had not been assigned to Thomas, otherwise he will be made to lose the land or the full value thereof, out of other claims due him, and also lose the note.

4th. We also think that though Thomas was properly refused the right to set up any notes which he had taken up, yet as he is wholly insolvent and the burthen of paying any new notes which he has executed with sureties, must devolve on the sureties, and as the creditors if the old notes had not been lifted by new notes, would have had the right to come in for a rateable distribution, it is just and equitable that the sureties to the renewed notes, should be substituted to the rights of the creditors, and be allowed to set up and claim distribution upon the notes taken up.

Black purchased land of Thomas and assigned a note, the land was not paid for, Thomas was insolvent, Black had to pay for the land, in a settlement of the estate of Thomas under the statute of 1839.—The note assigned should be restored to Thomas.

One who was insolvent became a creditor of an insolvent, by taking up the notes of the latter, to which there were sureties, and giving his own note with surety, in a settlement of the estate of the decedent under the statute of 1839, the sureties to the new notes should be allowed to prove the claim, and share *pro rata* with other creditors.

5th. Though the evidence of Thomas, the principal obligor, was not sufficient to authorize the usury to be deducted from John Martin's notes, it was sufficient to authorize a further enquiry into the matter, by interrogatories to John Martin, who is before the Court, which the Chancellor should have required the master to make, and to take further proof, if to be had, on the subject. With the statement of Thomas upon oath, specifying the usury, the Chancellor should not have permitted the matter to pass without a strict scrutiny.

The decree of the Chancellor is reversed for the errors suggested, and cause remanded, that the case may be again committed to the master, and further enquiry made, as intimated, as to the usury embraced in John Martin's notes, and report made and decree rendered as indicated in this opinion.

*Turner* for plaintiffs; *Hanson* for defendants.

The Chancellor when the facts disclosed authorize it, should refer the question of usury or no usury to the master for inquiry and report.